No. 330 May 15, 2024 641

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

D. C. B,
*Petitioner-Respondent,*

*v.*

ANDREW P. BLEDSOE,
*Respondent-Appellant.*

Linn County Circuit Court
22SK02751; A180229

Heidi M. Sternhagen, Judge.

Submitted April 12, 2024.

Kent Hickam filed the brief for appellant.

No appearance by respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and
Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

**KISTLER, S. J.**

Respondent appeals a judgment entering a permanent stalking protective order (SPO) against him pursuant to ORS 30.866. On appeal, respondent contends that the trial court erred in determining that the statutory requirements for an SPO were satisfied. Viewing "the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition" and "assess[ing] whether, when so viewed, the record is legally sufficient to permit" that disposition, *K. M. V. v. Williams*, 271 Or App 466, 467, 351 P3d 808 (2015), we affirm.[1]

A detailed recitation of the facts would not benefit the bench, the bar, or the public. In short, respondent contends that the trial court erred in entering the SPO because the record "does not establish at least two unwanted contacts" and, in any event, "the nature of any contact did not reasonably and objectively cause fear or alarm." *See* ORS 30.866 (entry of an SPO requires a petitioner to prove by a preponderance of the evidence that respondent engaged in "repeated unwanted contact" and that it "is objectively reasonable for a person in the petitioner's situation to have been alarmed or coerced by the contact"); ORS 163.730(7) ("repeated" means "two or more times").

We disagree with respondent. As to respondent's first argument, the evidence would have permitted the trial court to find that petitioner told respondent that she "was completely done" and that she was "blocking him" on her phone on June 3, 2022, and that he subsequently engaged in unwanted, nonexpressive contacts on July 24, 2022, August 12, 2022, and September 9, 2022, when he came to her house on each of those days while she was at home. *See State v. Hejazi*, 323 Or App 752, 759-60, 524 P3d 534 (2023) (explaining that a "contact" can "include almost any interaction with the defendant and can be categorized as either nonexpressive (physical or visual) contacts or expressive (spoken or written) contacts"). Although respondent views the evidence differently—advancing the

---

[1] Respondent has not requested *de novo* review, and we do not view this as an "exceptional case" in which *de novo* review would be appropriate. ORAP 5.40(8)(c) ("The Court of Appeals will exercise its discretion to try the cause anew on the record or to make one or more factual findings anew on the record only in exceptional cases.").

view that it was not until July 24, 2022, that petitioner told respondent not to contact her, and that the only time he came to her house after that was on September 9, 2022—respondent's understanding of the facts is inconsistent with our standard of review. *See State v. Pumphrey*, 266 Or App 729, 730, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015) ("If the trial court did not make express findings on a disputed point of fact, we presume that the court implicitly found the facts consistent with the judgment it entered.").

Nor are we persuaded by respondent's second argument—*viz.*, that "the nature of any contact did not reasonably and objectively cause fear or alarm." In our view, sufficient evidence supports the trial court's determination that it would have been objectively reasonable for a person in petitioner's situation to have been alarmed by the August 12, 2022, and September 9, 2022, contacts.[2] During the former of those contacts, respondent spent 10 minutes banging on petitioner's doors and windows, including a sliding glass door in her backyard, and yelling at her. During the latter of those contacts, respondent knocked on petitioner's doors and windows, strewed screws under the rear tires of her vehicle, and did not leave until police arrived.

In reaching our conclusion regarding respondent's second assignment of error, we note that, on August 6, 2022, respondent sent petitioner a text message in which he told petitioner that the "gloves were off," that she should "try to be safe," and that it was a "good thing" that he "saved this copy of [her] apartment key." That expressive conduct provides context for why it would have been objectively reasonable for a person in petitioner's situation to have been alarmed by the August 12, 2022, and September 9, 2022, contacts. *See D.W.C. v. Carter*, 261 Or App 133, 141, 323 P3d 348 (2014) (expressive conduct can provide relevant context for nonexpressive contacts).

In sum, we conclude that the trial court did not err.

Affirmed.

---

[2] Because the August 12, 2022, and September 9, 2022, contacts were sufficient for the trial court to issue the SPO, we need not consider whether it would have been objectively reasonable for petitioner to have been alarmed by the July 24, 2022, contact.